**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

RYAN FERGUSON, )
)
      Plaintiff, )
)
v. )
) No. 2:14-cv-04062-NKL
JOHN SHORT, et al., )
)
      Defendants. )

## ORDER

In this civil lawsuit, Plaintiff Ryan Ferguson alleges violations of federal and state laws arising out the Defendants' investigation of Ferguson and his prosecution for the murder of Kent Heitholt. Defendants Short, Nichols, Westbrook, Liebhart, Stroer, and Simons were detectives at the Columbia, Missouri Police Department during the investigation and prosecution of Ferguson. Defendant Boehm was the Chief of Police at the time and Defendant Monticelli was a sergeant in the Department. Defendants Haws and White were investigators with the Boone County Prosecuting Attorney's Office. Defendant Crane was the Boone Country Prosecuting Attorney who prosecuted Ferguson. The City of Columbia and Boone County are also Defendants.

In his First Amended Complaint, [Doc. 35], Ferguson claims that certain Defendants violated his federal rights under 42 U.S.C. § 1983 by destroying and suppressing evidence (Count I), fabricating evidence (Count II), recklessly or intentionally failing to investigate (Count III), maliciously prosecuting him (Count IV),

and conspiring with each other (Count V). He alleges the City of Columbia and County of Boone are liable for these acts because they had a custom or policy to permit such conduct. (Count VI). He also alleges Missouri state law violations for false arrest (Count VII) and defamation (Count VIII).

Pending before the Court are Motions to Dismiss filed by White, Boone County, the City of Columbia, Boehm, Monticelli and Crane. White's Motion to Dismiss is granted as it relates to Count IV and denied as to Counts III and V. The Motions to Dismiss filed by the City of Columbia and Boone County are denied. The Motions to Dismiss filed by Crane, Monticelli and Boehm are granted as they relate to Count IV, VI and VIII.

## I.    Background

The purpose of this Order is to determine whether certain allegations made by Ferguson in his First Amended Complaint are sufficient to state a claim recognized by law. At this stage of the litigation, the Court makes no findings of fact but instead relies solely on the following allegations made by Ferguson in his First Amended Complaint.

On November 1, 2001, Kent Heitholt was murdered next to his car. Despite an investigation by the Columbia Police Department and the Boone County Prosecuting Attorney's Office, no arrests were made for more than two years. In November 2003, Charles Erickson, a man in the same graduating class as Ferguson and who was with Ferguson the night of Heitholt's murder, read an article about the Heitholt murder. Erickson began to experience feelings of paranoia after a composite sketch provided by a witness at the crime scene resembled him.

The night of the murder, Erickson and Ferguson had been at a bar located in downtown Columbia. Erickson and Ferguson left the bar shortly before it closed at 1:30 a.m. Erickson ingested drugs and alcohol that night. The next morning, Erickson had no memory of leaving the bar or arriving at his house. In January 2004, Erickson expressed concern to Ferguson that he had repressed the murder. A bystander overheard the conversation and informed the Columbia Police Department.

In March 2004, Erickson came to the Columbia Police Department. His behavior and appearance suggested he was mentally impaired and under the influence of alcohol or drugs. After Erickson repeatedly gave information that was inconsistent with the evidence recovered from the crime scene, Defendants Short and Nichols provided Erickson information and details about the murder and coerced a confession out of him, which also implicated Ferguson. After obtaining Erickson's fabricated confession, Defendants Short, Nichols, Westbrook, Liebhart, Stroer, Simons, Monticelli and Boehm, (Columbia Police Officer Defendants) fabricated or coerced additional witness statements to corroborate Erickson's statements. They also destroyed or suppressed evidence that would impeach statements made by Erickson about the night of the murder and other evidence that would tend to show Ferguson was not guilty of the murder.

In March 2004, Ferguson was arrested for the murder of Heitholt. Ferguson was never presented in a lineup to two possible witnesses. The Columbia Police Officer Defendants did not investigate the last person to see Heitholt alive, who also made numerous inconsistent statements about the night of Heitholt's murder and who had had a recent dispute with Heitholt. The Columbia Police Officer Defendants continued to

fabricate evidence and reports and suppress evidence that would tend to show Ferguson was not guilty of Heitholt's murder. They also met and agreed to use fabricated evidence to induce a plea agreement from Erickson. The Columbia Police Officer Defendants and Defendants White and Haws met on multiple occasions to discuss the case. Erickson was never told about evidence that was discovered by the Defendants that would tend to show that he was not guilty. For example Detective Short and Investigators White and Haws interviewed people who were at the same bar as Erickson and Ferguson the night of the murder. The witnesses consistently told Short, White, and Haws that the bar closed at 1:30 a.m. This information undermined statements made by Erickson about the timing of the murder and his statement that after they committed the murder (approximately 2:15 a.m.), they went back to the bar.

In October 2005, Ferguson was tried by a jury and found guilty of second degree murder. After several appeals and eight years in prison, the Missouri Court of Appeals granted Ferguson's petition for writ of habeas corpus and vacated his conviction, citing a pattern of nondisclosures which included evidence that a witness at the crime scene could not identify Ferguson or Erickson after seeing their photographs. After the Missouri Attorney General's Office declined to retry Ferguson, Boehm and Crane made statements to the media about the investigation and prosecution of Ferguson which are alleged to be false statements of fact.

I.    **Discussion**

A. **Count III: Reckless or Intentional Failure to Investigate, 42 U.S.C. § 1983**

Count III alleges "Defendants Haws, White, and the [Columbia Police Officer Defendants] recklessly and/or intentionally failed to conduct an investigation that would have led to the real murderer of Heitholt and eliminated [Ferguson] and Erickson as suspects". [Doc. 35, ¶ 240]. Defendant White contends that this claim against him should be dismissed because all of the specific allegations in the First Amended Complaint concerning a failure to investigate only discuss misconduct by Columbia Police Department personnel. Thus the narrow question before the Court is whether there is any allegation in Count III that states a viable claim against White for recklessly or intentionally failing to conduct an investigation that would have eliminated Ferguson as a suspect. The Court finds that there is and therefore White's Motion to Dismiss must be denied.

"Intentionally or recklessly failing to investigate other leads or manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause." *Livers v. Schenck*, 700 F.3d 340, 350 (8th Cir. 2012) (citations omitted). "Negligence and even gross negligence is not enough because the state action must be 'truly egregious and extraordinary' to shock the conscience and so severe as to amount to 'brutal and inhumane abuse of official power.' *Id.* (internal citations omitted). The Eighth Circuit has recognized three areas of "reckless investigation": "(1) coercing a suspect's confession; (2) purposely ignoring evidence suggesting innocence; and (3) systemic pressure to implicate a suspect in the face of evidence to the contrary." *Id.* (internal quotations omitted).

While Ferguson alleges several acts of failure to investigate against the Defendants in Count III, he only factually describes one incident involving White in his Amended Complaint. During the investigation and prosecution of Ferguson, White was an investigator with the Boone County Prosecuting Attorney's Office. [Doc. 35, ¶ 17]. Prior to Ferguson's trial, and not at the direction of Prosecuting Attorney Kevin Crane, White interviewed a bartender at the bar Ferguson and Erickson went to on the night of the murder. The bartender told White everyone was out of the bar by 1:30 a.m., which is evidence that would impeach Erickson's testimony that he and Erickson were in the bar after 2:15 a.m. Thus, Ferguson's Amended Complaint alleges White purposefully ignored evidence tending to eliminate Ferguson as a suspect and suppressed the bartender's statements from Erickson, defense attorneys, and the prosecution. *Id.* at ¶ 161, 167-69, 241. The Eighth Circuit has held that an allegation that a defendant has "purposefully ignored evidence that strongly tended to exonerate" the plaintiff could be sufficient to support a claim for reckless investigation. *See Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002). As alleged, Ferguson has fairly put White on notice of this Constitutional claim for failure to investigate; no more is required at this stage of the litigation.

White also argues that regardless of whether Ferguson sufficiently pleaded a claim against him, he is entitled to absolute immunity because he was employed by the Boone County Prosecuting Attorney's Office, and during the investigation he was acting within his prosecutorial function. "A prosecutor enjoys absolute immunity for acts performed in initiating a prosecution and in presenting the State's case. Functions intimately associated

with the judicial phase of the criminal process as opposed to investigative 'police work' .

. . are absolutely shielded from liability."   *Reasonover v. St. Louis Cnty, Mo.*, 447 F.3d

569, 579 (8th Cir. 2006).  This immunity extends to a prosecutor's investigators so long

as their actions are in connection with a criminal prosecution.  *Keating v. Martin*, 638

F.2d 1121, 1122 (8th Cir. 1980).  However,

> [t]here is a difference between the advocate's role in evaluating evidence
> and interviewing witnesses as he prepares for trial, on the one hand, and the
> detective's role in searching for the clues and corroboration that might give
> him probable cause to recommend that a suspect be arrested, on the other
> hand. When a prosecutor performs the investigative functions normally
> performed by a detective or police officer, it is "neither appropriate nor
> justifiable that, for the same act, immunity should protect the one and not
> the other.

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

White has not established that on the face of Ferguson's Amended Complaint,

White's interview of the bartender was done in furtherance of the prosecutorial function

as opposed to investigative police work.  To the contrary, Ferguson specifically alleges

that Crane, Boone County Prosecuting Attorney at the time the investigation was

ongoing, did not ask White to interview the bartender.  [Doc. 35, ¶ 172].  While Ferguson

did allege that the interview occurred "prior to [Ferguson]'s trial," this is insufficient to

suggest that the interview was purely prosecutorial.  Instead, further factual information

is necessary to determine if White was engaging in police-type investigative work.  *See*

*Gobel v. Maricopa Cnty*, 867 F.2d 1201 (9th Cir. 1989) (plaintiffs adequately alleged that

the prosecutors acted in a non-prosecutorial investigatory role, and "[g]iven the limited

factual record at this point in the proceedings, it does not appear beyond doubt that the

plaintiffs will be unable to prove that the prosecutors were engaging in police-type investigative work"), *abrogated on other grounds by Merrit v. Cnty of Los Angeles*, 875 F.2d 764 (9th Cir. 1989).

White also argues in a footnote that he cannot be liable for failure to investigate because, as a member of the Boone County Prosecuting Attorney's Office, he had no duty to investigate. However, this argument does not negate the fact that White did conduct an investigation. He cannot engage in misconduct during an investigation and subsequently seek to excuse the misconduct by claiming he had no duty to investigate in the first place. This is especially true in light of the facts alleged against him – that he interviewed a witness who provided potentially exculpatory evidence and did not tell anyone, including the prosecutor, about the information he learned.

White's Motion to Dismiss count III is denied.

## B. Count IV: Malicious Prosecution, 42 U.S.C. § 1983

Count IV alleges that several Defendants, including White, Boehm and Monticelli are liable under § 1983 because they "maliciously caused the commencement and/or continuation of a baseless prosecution against [Ferguson] without probable cause" in violation of the Fourth, Sixth, and Fourteenth Amendments. [Doc. 35, ¶ 248]. Defendants White, Boehm, and Monticelli seek dismissal of Count IV. [Docs. 49, 57]. "Section 1983 only provides a remedy for violations of rights expressly secured by federal statutes or the Constitution." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). Malicious prosecution claims are recognized under state law but the question presented here is whether federal law recognizes such claims.

The Eighth Circuit has recognized that facts supporting a malicious prosecution claim could arise under 42 U.S.C. § 1983 but only if they independently infringe on a specific provision of the Constitution or federal statute. *See, Gunderson v. Schlueter,* 904 F.2d 407, 409 (8th Cir. 1990). Ferguson has alleged three provisions of the U.S. Constitution to support his federal law malicious prosecution claim – the Fourth, Sixth and Fourteenth Amendments. But it is unclear under Eighth Circuit law whether a federal claim for malicious prosecution exists under any of these Amendments *See Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013) and *Harrington v. City of Council Bluffs, IA*, 678 F.3d 676, 679 (8th Cir. 2012). However, the Court need not resolve the thorny issue of whether any provision of the U.S Constitution prohibits a "malicious prosecution", because even if such a right exists, it was not clearly established at the time of Ferguson's prosecution and therefore Defendants White, Boehm, and Monticelli are entitled to qualified immunity.

Government officials are entitled to qualified immunity from liability for civil damages when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The proper inquiry as to whether an officer is entitled to qualified immunity is whether the official's conduct has "violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Chambers v. Pennycook*, 641 F.3d 898, 903 (8th Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when "the contours of the right" are

"sufficiently clear that a reasonable official could understand that what he is doing

violates that right." *Chambers*, 641 F.3d at 908.

In 2005, at the time Ferguson was prosecuted, a reasonable government official

could not have known that a malicious prosecution violated Ferguson's Constitutional

rights. *See Harrington*, 678 F.3d at 680-81.  In 1994, the Supreme Court described in

*Albright v. Oliver,* 510 U.S. 266 (1994), the "embarrassing diversity of judicial

opinion" on the extent to which a claim of malicious prosecution is actionable under §

1983, but declined to resolve the issue. *Albright*, 510 U.S. at 270, n. 4.  In 2012, citing

*Albright*, the Eighth Circuit concluded that a § 1983 malicious prosecution claim would

"probably" arise under the Fourth Amendment "[i]f malicious prosecution is a

constitutional violation at all," suggesting that even the Eight Circuit is unsure.

*Harrington*, 678 F.3d at 679.  The Eighth Circuit also acknowledged that its sister circuits

"have taken a variety of approaches on the issue of whether or when malicious

prosecution violates the Fourth Amendment" but the Eighth Circuit declined to enter the

debate. *Id.* at 680.  Further, the Eighth Circuit has been reluctant to find a § 1983

malicious prosecution claim even under the Fourth Amendment on the facts alleged by

Ferguson. *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) ("[T]his court

has uniformly held that malicious prosecution by itself is not punishable under § 1983

because it does not allege a constitutional injury."); *Joseph v. Allen*, 712 F.2d 1222 (8th

Cir. 2013) ("[A]n allegation of malicious prosecution without more cannot sustain a civil

rights claim under § 1983.").

Because no clearly established federal claim for malicious prosecution existed at the time of Ferguson's prosecution, the Motions to Dismiss Count IV are granted. However, as requested by Ferguson, the dismissal of the malicious prosecution claims against White, Boehm and Monticelli is without prejudice so that Ferguson may amend his Amended Complaint to bring a malicious prosecution claim under Missouri state law. Any such amendment to Count IV must be filed within twenty days of the date of this Order.

### C. Count V: Conspiracy to Deprive Constitutional Rights, 42 U.S.C. § 1983

Count V alleges the Columbia Police Officer Defendants and Defendants Haws and White conspired to: suppress favorable, material evidence from Ferguson, recklessly or intentionally fail to conduct an investigation that would have established his innocence, and cause the commencement or continuation of a baseless prosecution against him. [Doc. 35, ¶¶ 253-257]. Defendant White has moved to dismiss Count V against him.

To allege a § 1983 conspiracy claim, a plaintiff must plead and support with factual allegations "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). The plaintiff must also plead a deprivation of a constitutional right or privilege. *Id.*

> For a claim of conspiracy under Section 1983, the plaintiff need not show that each participant knew the exact limits of the illegal plan, but the

plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights. The question of the existence of a conspiracy to deprive the plaintiffs of their constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a "meeting of the minds" or understanding among the conspirators to achieve the conspiracy's aims.

*Id.* at 816.

Ferguson has made allegations that White conspired to suppress evidence suggesting Ferguson's innocence. Ferguson has alleged that White, along with the Columbia Police Officer Defendants, interviewed multiple witnesses about the time the bar closed. [Doc. 35, ¶¶ 161-82]. Each of these witnesses provided evidence that could potentially impeach Erickson's testimony about Ferguson's and Erickson's actions the night of the murder, and each of the Defendants who interviewed these witnesses did not disclose the information to Erickson, Ferguson's counsel, or the prosecutor. *Id.* Nor did they further investigate. Ferguson also alleges that White met with the Columbia Police Officer Defendants and Haws on multiple occasions throughout the investigation to discuss the case. *Id.* at ¶ 254. The circumstances alleged are sufficient to create the inference that White, Haws, and the Columbia Police Officer Defendants had an understanding among themselves to suppress exculpatory evidence, and therefore, Ferguson has met his burden of alleging at least "some facts suggesting . . . a meeting of the minds." *See Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985).

White cites to the Eighth Circuit's opinion in *Manis v. Sterling*, 862 F.2d 679 (8th Cir. 1998), in support of his argument that Ferguson's allegations are conclusory. In *Manis*, the plaintiff alleged that the public defenders assigned to represent him conspired

with state court judges to delay the adjudication of the plaintiff's post-conviction lawsuits. *Id.* at 681. The Eighth Circuit dismissed his conspiracy claim and remarked that none of the allegations in the complaint supported an inference that the defendants had reached any agreement or meeting of the minds. *Id.* Contrary to *Manis*, Ferguson has alleged specific information, discussed above, to support an inference that White and the other Defendants reached an agreement or meeting of the minds. White's Motion to Dismiss Count V is therefore denied.

### D. Count VI: *Monell*, 42 U.S.C. § 1983

Count VI alleges the City of Columbia and Boone County "adopted policies, practices, and customs which operated to deprive [Ferguson] of his constitutional rights." [Doc. 35, ¶ 267]. The unconstitutional policies, practices or customs alleged include the suppression, destruction, or fabrication of evidence, use of coercive interrogation techniques, failure to investigate potential leads, use of unreliable witnesses, failure to properly train officers and investigators, failure to discipline officers who violate the Constitution, and deliberate indifference to the violation by officers of an accused's constitutional rights. *Id.* at ¶ 269. Ferguson alleges the City of Columbia and Boone County had unconstitutional written policies and unconstitutional practices or customs. He also alleges the City of Columbia – through the conduct of its final policymaker, Boehm – and Boone County – through the conduct of its final policymaker, Crane – adopted unconstitutional policies and were "deliberately indifferent to an obvious need to train the Columbia Police Officer Defendants and Defendants Haws and White." [Doc. 35, ¶¶ 267, 271]. Ferguson asserts the same allegations against Boehm and Crane.

13

Boehm, Crane, the City of Columbia, and Boone County have moved to dismiss Count VI. [Docs. 54, 57, 59].

A municipality or local government can be sued directly under § 1983 when that local government implements an unconstitutional policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). However, "a local government may not be sued under § 1983 for an injury inflicted *solely* by its employees or agents." *Id.* at 694. Instead, a plaintiff must plead that his injury is caused by "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* Such a showing requires either proof of the existence of an official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or deliberate indifference to a individual's federal rights. *Ware v. Jackson Cnty, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). "Although rare, a public official's single incident of unconstitutional activity can [also] establish the requisite policy if the decision is taken by the highest officials responsible for setting policy in that area of the government's business." *Rynders v. Williams*, 650 F.3d 1188, 1195 (8th Cir. 2011) (internal quotations omitted).

### 1. Randy Boehm and Kevin Crane in their Official Capacities

In Count VI, Ferguson asserts claims against Boehm and Crane in their official capacities. Both Boehm and Crane argue they should be dismissed from Count VI because the real party in interest in an official-capacity suit is the governmental entity of which an officer is an agent. [Doc. 58, at pp. 10-11; Doc. 60, at pp. 3-4]. They also

argue that Ferguson's official-capacity claims against them are redundant with the claims against the City of Columbia and Boone County. Ferguson does not oppose Boehm's and Crane's argument. [Doc. 74, at p. 13; Doc. 75, at p. 11]. The claims in Count VI against Boehm and Crane in their official capacities are dismissed with prejudice.

## 2. City of Columbia

The City of Columbia argues Count VI should be dismissed because Ferguson has failed to plead the existence of an unconstitutional policy or custom. For purposes of its Motion to Dismiss, the City of Columbia does not challenge allegations of *Monell* liability premised on the conduct of Boehm as a final policymaker.

The Eighth Circuit has made it clear that "policy" and "custom" are not interchangeable. "Official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy." *Ware*, 150 F.3d at 880. A policy includes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by a local government's officers. *Monell*, 436 U.S. at 690. Custom or usage, on the other hand, is demonstrated by:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.,* proof that the custom was the moving force behind the constitutional violation.

*Ware*, 150 F.3d at 880. A custom is a practice of officials that is not authorized by written law, but which is so widespread as to have the force of law. *Harris v. City of Pagedale*, 821 F.2d 499, 504 n.7 (8th Cir. 1987).

The City of Columbia first argues that Ferguson has failed to allege sufficient facts to plead the existence of an unconstitutional policy because his Amended Complaint does not identify, quote, or in any way reference a specific written unconstitutional policy. However, while a plaintiff must include "allegations, reference[s], or language by which one could begin to draw an inference that the conduct complained of resulted from an unconstitutional policy," a plaintiff need not specifically plead the existence of an unconstitutional policy or incorporate the policy's specific language in his complaint. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). "When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe ex rel. Doe v. School Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Ferguson alleges the existence of multiple policies, including policies related to the suppression, destruction, or fabrication of evidence, use of coercive interrogation techniques, use of unreliable witnesses, a policy of inadequate training for officers and investigators, and a policy of refusing to discipline officers and investigators who commit constitutional violations. [Doc. 35, ¶ 269]. Ferguson also alleges that multiple officers or investigators were involved in such acts as fabricating and suppressing evidence and coercing witnesses. *See e.g.*, [Doc. 35, ¶¶ 83, 101, 114, 155, 162-166]. These allegations suggest that the officers and investigators acted

pursuant to a policy given the plausible inference that such coordinated and widespread conduct could not exist without express or tacit approval by the City. As alleged by Ferguson, this is not a single incident involving separate and independent acts by unrelated employees of the Columbia Police Department. Rather, it is alleged to be a conspiracy of so many officers that a reasonable fact finder could conclude it was done with the actual or tacit approval of the City. Therefore, the City's Motion to Dismiss the *Monell* claim is denied. However, Ferguson's *Monell* claim is limited to the facts relied on by Ferguson in opposition to the City's Motion to Dismiss, i.e., evidence of a wide spread conspiracy by multiple Columbia police officers to do the acts alleged by Ferguson.

As for his failure to train claim against the City, Ferguson argues that he need not plead a pre-existing pattern of unconstitutional conduct because the need to train officers "on their constitutional *Brady* obligations" is obvious. Ferguson relies on the "single incident" rule articulated in *Connick v. Thompson*, 131 S.Ct. 1350 (2011). In *Connick*, the Supreme Court held that a failure to train prosecutors in their *Brady* obligations does not fall within the narrow range of single-incident liability. *Id.* at 1361; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). The Supreme Court reasoned that "unlike police officers" who are not familiar with constitutional constraints or the legal information they may require to perform their job, "attorneys . . . are equipped with the tools to find, interpret, and apply legal principles." *Connick,* 131 S.Ct. at 1364.

Courts interpreting *Connick* and its predecessor *Canton* have held that the failure to train non-attorneys on the disclosure requirements of the Constitution can give rise to a

*Monell* claim even without any instance of prior constitutional violations. *See Davis v. Clark Cnty, Wash.*, 966 F. Supp. 2d 1106, 1137 (W.D. Wash. 2013); *Cristini v. City of Warren*, 2012 WL 5508369 at * 12-13 (E.D. Mich. 2012); *Haley v. City of Boston*, 657 F.3d 39, 52 (1st Cir. 2011)*; Crews v. Cnty of Nassau*, 2014 WL 558696 at * (E.D. N.Y. 2014); *Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006); *but see LeFever v. Ferguson*, 2013 WL 3568053, at *8 (S.D. Ohio 2013). This Court agrees. Therefore, Ferguson has pleaded sufficient facts to support the "single-incident" rule as it relates to the City of Columbia's alleged failure to train its officers to document and disclose interviews providing exculpatory and impeachment evidence. [Doc. 35, ¶ 271].

The City of Columbia's Motion to Dismiss Count VI is denied.

### 3. Boone County

Boone County, like the City of Columbia, argues Ferguson has failed to plead the existence of an unconstitutional policy or custom. Both Boone County and Ferguson make arguments almost identical to the arguments addressed above. Therefore, for the same reasons and subject to the same limitations stated above, the Court denies Boone County's Motion to Dismiss. This is so even though Boone County argues that investigators from the Boone County Prosecuting Attorney's Office are different from the Columbia police officers because the investigators are supervised by prosecuting attorneys who are familiar with *Brady* obligations, and therefore, a need to train investigators about disclosing exculpatory evidence is less obvious. However, Ferguson alleges that White and Haws took action without Crane's knowledge. Further, whether the investigators were sufficiently supervised by prosecutors is a question for discovery.

18

Unlike the City of Columbia, Boone County also argues that it is not liable for any unconstitutional policies that could be attributed to it through the conduct of Crane, the Boone County Prosecuting Attorney during the Ferguson investigation and prosecution. Boone County contends that any policies adopted by Crane cannot be attributed to Boone County because Crane did not have final policymaking authority to establish policy on its behalf. Rather, Boone County argues, Crane was solely an agent of the State of Missouri.

"Not every action by a municipal official will subject a city to liability under § 1983. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Harris v. City of Pagedale*, 821 F.2d 499, 506 (8th Cir. 1987). Whether a particular official has final policymaking authority so as to bind a municipality for purposes of liability under § 1983 is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Id.* at 124.

Boone County cites several Missouri statutes prescribing a prosecutor's duties and how he is paid, RSMo. § 56.060, his salary, *Id.* at § 56.265, and his authority to appoint assistant prosecutors and investigators, *Id.* at § 56.151. Along with these statutes, Boone County also cites to Missouri case law to support the conclusion that a county prosecutor such as Crane is an agent of the State of Missouri. *See State v. Harrington*, 534 S.W.2d 44, 49 (Mo. 1976); *Missouri Prosecuting Attorneys v. Barton Cnty*, 311 S.W.3d 737, 748 (Mo. 2010) (Wolff, J., concurring); *State v. Goree*, 546 S.W.2d 785, 788 (Mo. Ct. App. 1977); *Williams v. State*, 730 S.W.2d 284, 288 (Mo. Ct. App. 1987). However, these

cases are not dispositive. For instance, in *Harrington*, 534 S.W.2d at 49, the Supreme

Court of Missouri remarked that the prosecuting attorney was an officer of the state, but

said so in the context of discussing the prosecutor's duty to initiate and carry out trials.

Likewise, in *Missouri Prosecuting Attorneys*, 311 S.W.3d at 748, Judge Wolff,

concurring, remarked that "in courtrooms throughout the state, prosecutors announce that

they represent the 'State of Missouri.'" Again, this is in the context of a courtroom and a

prosecutor's duty to carry out the prosecutorial function. In *Goree*, 546 S.W.2d at 788,

the Missouri Court of Appeals remarked that the "[t]he prosecutor represents the state . . .

because he is retained by the state *for the prosecution of persons* accused of crimes."

(emphasis added). In *Williams*, 730 S.W.2d at 288, the Missouri Court of Appeals

remarked that "[t]he Callaway county prosecutor is an agent of the state" but did so in

discussing a plea agreement made by the prosecutor on behalf of the state after initiating

a prosecution.

Count VI does not allege that Crane was a final policymaker for Boone County

when he was enforcing state law or policy by prosecuting Ferguson. Rather, Ferguson

alleges that Crane was a final policymaker for Boone County when he established broad

policies related to criminal *investigations* conducted by his investigators. [Doc. 35, ¶ 266]

("Defendant Crane, as Prosecuting Attorney for Boone County, had final policymaking

authority for Boone County regarding the customs, rules, policies, and practices that

govern the investigators of the Boone County Prosecuting Attorney's Office, including

Defendants Haws and White."). In other words, Ferguson argues that Crane served a

dual function in his role as Boone County Prosecuting Attorney; he pursued his duties as

a state agent when prosecuting criminal cases, but served as a final policymaker for

Boone County when conducting duties that were administrative or managerial in nature.

*See also Rinehart v. Howell Cnty.*, 153 S.W.2d 381, 383 (Mo. 1941) ("The duties of a

prosecuting attorney are many and varied. He, among other things in addition to the

prosecution of criminal actions, represents the state and county in all civil cases in his

county, represents generally the county in all matters of law, investigates claims against

the county, draws contracts relating to the business of the county, gives legal opinions in

matters of law in which the county is interested, et cetera.").

Though the Eighth Circuit has not yet provided guidance in this area of law, other

courts have held that while a prosecutor represents the state in exercising his authority

over prosecutorial decisions, a county can be liable for the actions of a prosecuting

attorney in the performance of that attorney's administrative or managerial duties. *See*

*Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992); *Carter v. City of*

*Philadelphia*, 181 F.3d 339, 352-53 (3d Cir. 1999) ("The recurring theme that emerges . .

. is that county or municipal law enforcement officials may be State officials when they

prosecute crimes or otherwise carry out policies established by the State, but serve as

local policy makers when they manage or administer their own offices."); *Esteves v.*

*Brock*, 106 F.3d 674, 678 (5th Cir. 1997) (holding that a prosecutor's use of peremptory

challenges during a judicial proceeding was an integral part of his prosecutorial function

and could not be attributed to the county, but remarking that the decision "does not

absolve a county of all responsibility for the actions of a district attorney in the

performance of his or her duties" particularly administrative or managerial duties);

*Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993); *Owens v. Fulton Cnty*, 877 F.2d 947, 952 (11th Cir. 1989; *Goldstein v. City of Long Beach*, 715 F.3d 750, 765 (9th Cir. 2013) (Reinhardt, J., concurring). *Cf. Franklin v. Zaruba*, 150 F.3d 682 (7th Cir. 1998) (sheriff is acting as county official, and not acting as agent of state, at time of alleged failure to properly train subordinates or establish policies to protect arrestees). For example, in *Walker*, 974 F.2d 293, the plaintiff sued the City of New York alleging it was liable for the district attorney's deliberate indifference to the training and supervision of the district attorney's assistants. The City of New York argued that the district attorney was a state official and that his deliberate indifference could not trigger municipal liability. *Id.* at 301. The Second Circuit, remarking that the plaintiff was challenging the district attorney's management of the office and the decision not to supervise or train his assistants, held that the plaintiff had sufficiently alleged a § 1983 claim against the municipality. *Id.* In contrast to challenges regarding prosecutorial misconduct – which would be attributable to the state – "when a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker." *Id.*

Reading the Amended Complaint in the light most favorable to Ferguson, as the Court is required to do at this stage of the litigation, the function complained of here is not Crane's prosecutorial conduct, but his administrative conduct; it involves policies related to the training, supervision, and discipline of his investigators, rather than decisions about whether and how to prosecute cases. Boone County's Motion to Dismiss is denied.

### E.  Count VIII: Defamation

Count VIII alleges both Kevin Crane and Randy Boehm made defamatory statements about Ferguson after his conviction was reversed in November 2013.  Both Crane and Boehm move for dismissal of Count VIII. Under Missouri law, the defamation analysis is comprised of two components.  *Pape v. Reither*, 918 S.W.2d 376, 380 (Mo. Ct. App. 1996).  "First, there is the question of whether the statement is defamatory at all . . . . Once a statement is found to be defamatory as defined, the court inquires as to whether one or more privileges . . . shelters the defaming party from legal action."  *Id.*

Both Crane and Boehm argue their statements are subject to the privilege afforded to statements of opinion.  Statements of opinion are absolutely privileged even if they are made maliciously.  *Id.*  "The only exception to this rule which is recognized by Missouri is that the privilege does not apply when the statement of opinion necessarily implies the existence of undisclosed defamatory facts."  *Id.*   The test to determine if a statement is opinion is "whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact."  *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 241 (Mo. Ct. Ap. 2011).  Examining the totality of the circumstances is essential to determine whether an ordinary reader would have treated the statement as an opinion.  *Henry v. Halliburton*, 690 S.W.2d 775, 788 (Mo. banc. 1985).  In considering the totality of the circumstances, factors to consider include "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or

hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." *Castle Rock*, 354 S.W.2d at 242.

### 1. Kevin Crane

In Count VIII, Ferguson alleges that around the same time Ferguson was released from jail and the Missouri Attorney General's Office announced that it would not retry him, Crane made a statement to the *Kansas City Star* "that [Ferguson] was guilty of the Heitholt murder." [Doc. 35, ¶ 210]. Crane stated, "I obviously think he's good for the offense, or I wouldn't have prosecuted him." [Doc. 35, ¶¶ 210, 279; Doc. 35-1]. Of the victim's family, Crane stated, "They know how I feel." *Id.*

Crane's statement does not imply an assertion of objective fact. First, the general tenor of the entire article[1] where Crane's statement was published negates the impression that Crane was stating an objective fact in contrast to his opinion about the case. Preceding the statements quoted by Ferguson, the article states "Crane, who was the prosecutor in the original case, stood by his earlier judgment." Phrases such as "I obviously think," "I feel," and "judgment" suggest to the reader that Crane was expressing his personal opinion on whether Ferguson committed the murders, not whether it was an objective, verifiable fact. *See Pape*, 918 S.W.2d at 380 ("The phrase 'it is my position' cannot be contorted to mean anything other than 'it is my belief' or 'I will attempt to prove' – glosses that likewise reflect the expression of an opinion."); *Ruzicka Elec. & Sons, Inc. v. Int'l Broth. of Elec. Workers, Local 1, AFL-CIO*, 427 F.3d

---

[1] The article, published by the *Kansas City Star*, was incorporated into and attached to Ferguson's Amended Complaint and can therefore be considered for the purpose of Crane's Motion to Dismiss. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1150-51.

511, 523 (8th Cir. 2005) (labor union agents' statements in the context of a labor dispute that they "thought the [plaintiff's] work was shoddy" and "felt" plaintiff's work on school project was "dangerous," "improper," and "not up to code" were statements of opinion). There are also statements in the article from Ferguson and his father illustrating that the article sought to report on all Parties' opinions of the case. Ferguson, citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990), argues that simply couching a statement in terms of opinion does not dispel the factual implications contained in the statement. While that may be true, the argument does not persuade the Court that the general tenor of the article as a whole, including Crane's statement, was one of fact rather than belief.

The statement is also not susceptible to being proven true or false at the time it was made, which is a requirement to establish that the statement was fact and not opinion. *Pape*, 918 S.W.2d at 381. At the time Crane made the statement, Ferguson was not declared "innocent" by the Missouri Court of Appeals. *Id.* ("[A]llegations of . . . illegal conduct are conclusions about the consequences that should attach to certain conduct, and as such they too are opinions. The fact that it might be eventually established in court that the persons accused in these statements indeed engaged in fraudulent or illegal conduct does not make the statements verifiable. . . . Thus, a statement must be verifiable at the time it is issued in order to be one of fact."). Ferguson argues that whether he murdered Heitholt is a verifiable fact because his conviction was vacated and because the Missouri Court of Appeals, citing numerous *Brady* violations by the investigative team and new evidence, stated that the "conviction is not a verdict worthy of either judicial or public confidence" [Doc. 74, at p. 6]. However, in vacating

Ferguson's conviction, the Missouri Court of Appeals did not declare his innocence and left the door open for the State of Missouri to retry Ferguson. *See Ferguson v. Dormire*, 413 S.W.3d 40, 53, 73 (Mo. Ct. App. 2013). There is also no way to verify the truth of the statement "They know how I feel."

Ferguson relies heavily on *Harrington v. Wilber*, 353 F.Supp.2d 1033 (S.D. Iowa 2005). In *Harrington*, Harrington was convicted of murder, but his conviction was later vacated on the grounds that the prosecutor at the time of his trial committed a *Brady* violation. In determining whether to retry Harrington, the new prosecutor conducted an investigation into the case and moved to dismiss the case noting that there was insufficient admissible evidence to support a conviction. Shortly after the case was dismissed, the same prosecutor issued a press release which stated,

> As you are all undoubtedly aware, I am very limited on the information I can convey outside of an official court document or proceeding.
> …
>
> *After personally spending hundreds of hours on this case, I have no doubt that Terry Harrington committed the murder of John Schweer on July 22, 1977. The jury made the right decision in 1978, and the right man went to prison for over twenty-five years.* That said, I also have no doubt that the admissible evidence which is left after twenty-six years is not sufficient to sustain a conviction against Mr. Harrington.
>
> The easy decision on this case would have been to let it drop when the Supreme Court granted Mr. Harrington a new trial earlier this year. I certainly had many people recommend that I take that easier path. That would not have been the right decision, however. *I owed it to the family of John Schweer to do my best on this case to bring his killer to justice a second time.* And while I am disappointed that I will not get the opportunity to put this case before a jury, I am satisfied that nothing else could have been done, by my office or by the Council Bluffs Police Department. *As for final justice for Terry Harrington, I will defer that honor to a higher power.*

*Id.* at 1036-37. Harrington claimed the italicized text was libelous and oral statements similar to it were defamatory. In denying the prosecutor's motion for summary judgment, the United States District Court for the Southern District of Iowa concluded "that a reasonable mind could find that the reference to an insufficiency of 'admissible evidence' indicates that [the prosecutor]'s hundreds of hours of investigation revealed facts to him supporting his certainty that Plaintiff is a murderer." *Id.* at 1042. The court remarked that the statement implied knowledge of information, unknown to the public that supports his statements as fact. *Id.*

This case is distinguishable from *Harrington*. The statements made by Crane do not imply knowledge of inadmissible facts or facts otherwise unknown to the public which establish that Ferguson murdered Heitholt. Crane stated that he believed Ferguson committed the murders or else he would not have prosecuted him. Considering the totality of the circumstances and Crane's specific statements, Feguson's allegation are insufficient to state a claim for defamation. Crane's Motion to Dismiss Count VIII is granted.[2]

### 2. Randy Boehm

Ferguson alleges that two days after Ferguson was released, Boehm made a statement to ABC News in Columbia, Missouri, "defending the investigation and also proclaiming [Ferguson]'s guilt." [Doc. 35, ¶ 212]. Boehm stated:

---

[2] Because the Court determined that Crane's statements are subject to the privilege afforded statements of opinion, the Court will not discuss Crane's alternative argument that his statements were protected by the judicial privilege.

> I had and still have complete confidence in our investigative team that worked this case. I believe this case was worked professionally and ethically and I still believe that the people responsible for this crime are the people we arrested. I also had and have complete confidence in the professionalism and integrity of Kevin Crane.

[Doc. 35, ¶¶ 212, 281; Doc. 35-2].

Like Crane's statements, Boehm's statements were statements of his belief. The three statements convey Boehm's belief as to the quality of the investigation and the performance of the investigative and prosecutorial team and are opinions that cannot form the basis of a viable defamation claim. *See Nigro v. St. Joseph Med. Ctr.*, 371 S.W.3d 808, 820 (Mo. Ct. App. 2012), *reh'g and/or transfer denied* (May 29, 2012)*, transfer denied* (Aug. 14, 2012) ("Nigro claims that no 'thorough investigation' occurred, but his argument is meritless. An investigation . . . unquestionably occurred. Whether the investigation was 'thorough' is a matter of opinion, which cannot form the basis of a viable defamation claim."). Boehm used phrases such as "complete confidence," "I believe," and "I still believe" – all statements which convey personal belief rather than fact. *See Ruzicka,* 427 F.3d at 523; *Pape*, 918 S.W.2d at 380. As to the statement "I still believe the people responsible for this crime are the people we arrested," it is not surrounded by statements implying unknown facts. The statement conveys that Boehm, who was the chief of police at the time Ferguson was arrested, believed that pursuant to his team's investigation, Ferguson committed the crime.

Ferguson asserts largely the same arguments and case law against Boehm's Motion to Dismiss as he did against Crane's Motion to Dismiss. For the same reasons described above, those arguments are unpersuasive. Similar to his argument against

Crane's Motion to Dismiss, Ferguson points out that his conviction was vacated based largely on *Brady* violations and other investigatory issues.  However, the Missouri Court of Appeal's opinion on the sufficiency of the investigation does not transform Boehm's opinion into fact.   Boehm's statement implies an assertion of his own belief, not an objective, verifiable fact.   Boehm's Motion to Dismiss Count VIII is therefore granted.

## II.    Conclusion

For the reasons set forth above, Boone County's and the City of Columbia's Motions to Dismiss are denied.  White's Motion to Dismiss as it relates to Counts III and V is denied.  Count IV is dismissed against Boehm, Monticelli and White, without prejudice.  Ferguson may amend Count IV to bring a malicious prosecution claim under Missouri state law.  Any amendment to Count IV must be filed within twenty days of the date of this Order.  The official capacity claims against Boehm and Crane in Count VI are dismissed with prejudice.  Count VIII is dismissed with prejudice.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  August 12, 2014
Jefferson City, Missouri